UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-22339-GAYLES

CHERYL SILVERMAN,

        **Plaintiff,**

v.

SUN LIFE AND HEALTH INSURANCE COMPANY,

        **Defendant.**

_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant Sun Life and Health Insurance Company's ("Defendant") Motion to Dismiss for Failure to State a Claim (the "Motion"). [ECF No. 6]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons set forth below, the Motion shall be denied.

## BACKGROUND[1]

In 1998, Plaintiff Cheryl Silverman ("Plaintiff") a purchased group long-term disability ("LTD") insurance policy from Combined Insurance Company of America ("CICA") (the "CICA Policy"). [ECF No. 1 ¶ 5]. At that time, she already had an individual disability insurance ("IDI") policy in force with MetLife (the "MetLife Policy"). *Id*. ¶ 7. Plaintiff purchased the CICA Policy as supplemental disability coverage to increase her total monthly benefit. *Id.* ¶ 8. The CICA Policy and the MetLife Policy did not contain an offset for benefits payable by the other policy. *Id.* 9.

---

[1] As the Court is proceeding on a Motion to Dismiss, it takes the facts as alleged in the Complaint as true. *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

On December 20, 2001, Defendant's predecessor, GE Group Life Assurance Company (GEGLAC), advised Plaintiff in a letter that:

- her "current [insurance] coverage under CICA will be replaced with new coverage through [GEGLAC]."

- GEGLAC's "mission is to provide [her] as an employer with the products and services that will enhance [her] benefit program . . . ."

- Transfer of her coverage would occur on March 1, 2002.

- Her "basic insurance plan [would] remain the same with respect to items such as plan deductible, coinsurance levels, elimination periods and benefit plan maximums."

- "Though [GEGLAC has] striven for uniformity, some contractual differences between [her] current plan of insurance and [her] new insurance coverage with GECLAC may exist."

- Her payment of the enclosed bill "will constitute [her] consent to transfer her current coverage to GEGLAC. In addition, it will indicate [her] agreement to participate in the multiple employer trust (MET) that serves as the group policyholder for the GEGLAC coverage."

- She would receive her new certificates of insurance after her conversion date, which GEGLAC encouraged her and her employees to review carefully.

(the "Letter"). [ECF No. 1-4].

Based on the representations in the Letter, Plaintiff paid the premiums for coverage. [ECF No. 1 ¶ 19]. GEGLAC then terminated the CICA Policy, wrote a new GEGLAC policy, and issued new certificates of coverage (the "GEGLAC Policy"). [ECF No. 1 ¶ 14]; [ECF No. 1-5].

2

Plaintiff was unaware that the GEGLAC Policy was not identical to the CICA Policy.[2] Unlike the CICA Policy, the GEGLAC Policy contained an offset for IDI benefits. [ECF No. 1-5 at 14]. As a result, the GEGLAC Policy would not pay a supplemental monthly benefit in combination with IDI coverage. [ECF No. 1 ¶ 16]. In addition, the GEGLAC Policy reduced the minimum monthly benefit to $100, whereas the CICA Policy provided that the minimum benefit would not be less than 11% of Insured Monthly Earnings. *Id.* ¶ 17.

Plaintiff continued to pay premiums for both the GEGLAC Policy and her MetLife IDI Policy. [ECF No. 1 ¶ 22]. In 2007, Defendant acquired GEGLAC and assumed liability on the GEGLAC Policy. *Id.* ¶ 23.

In June 2020, Plaintiff became disabled from her occupation as an attorney and submitted claims under both her GEGLAC Policy and the MetLife Policy. *Id.* ¶ 25. Both Defendant and MetLife approved Plaintiff's disability claims. *Id.* ¶ 26. However, Defendant, relying on the GEGLAC Policy's IDI offset, reduced Plaintiff's benefits to the $100/month minimum. *Id.* ¶ 27. Plaintiff appealed, but Defendant denied the appeal.

On July 26, 2022, Plaintiff filed this action against Defendant alleging claims under Florida law for fraudulent inducement (Count I) and negligent misrepresentation (Count II), violations of the Illinois Consumer Protection Act (Count III), and violations of the Connecticut Unfair Trade Practices Act (Count IV). [ECF No. 1]. The crux of each of Plaintiff's claims is that GEGLAC made misrepresentations in the Letter about the GEGLAC Policy to induce her to accept the new GEGLAC Policy. In particular, Plaintiff contends that the GEGLAC Policy provided significantly less coverage than the CICA Policy despite GEGLAC representing that her coverage would remain the same.

---

[2] The Complaint does not explain why Plaintiff failed to review the provisions of the GEGLAC Policy for the eighteen years that she paid premiums.

Defendant has moved to dismiss Plaintiff's Complaint, arguing that all of Plaintiff's claims are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., and that leave to amend to assert ERISA claims should be denied.

**STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997). The Court "may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).[3]

---

[3] Defendant relies on the Declaration of Michael Sabadosa, a Senior Underwriting Consultant for Defendant, and several screenshots of Defendant's internal computer systems to establish that the GEGLAC Policy is an ERISA plan. Unlike a contract or other documents referenced in a complaint, these documents cannot be considered at this stage of the litigation. *See Quinonez v. United States*, No. 22-81425, 2023 WL 2393714, at *3 (S.D. Fla. Feb. 16, 2023)

4

## DISCUSSION

There are two types of preemption under ERISA: complete preemption and defensive or conflict preemption. *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1344 (11th Cir. 2009). Under the doctrine of complete preemption, "Congress may preempt an area of law so completely that any complaint raising claims in that area is necessarily federal in character and therefore necessarily presents a basis for federal court jurisdiction. Congress has accomplished this 'complete preemption' in [ERISA § 502(a)], which provides the exclusive cause of action for the recovery of benefits governed by an ERISA plan." *Cotton v. Mass. Mutual Life Ins. Co.*, 402 F.3d 1267, 1281 (11th Cir. 2005) (quoting *Kemp v. Int'l Bus. Mach. Corp.*, 109 F.3d 708, 712 (11th Cir. 1997)) (internal citation removed). Conflict or defensive preemption is not jurisdictional. Rather, it stems from ERISA § 514(a), which provides that the terms of the statute supersede all state laws that "relate to" an ERISA plan. 29 U.S.C. § 1144(a). Defensive preemption operates as an affirmative defense and requires dismissal of such claims. *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999). Here, Defendant argues that Plaintiff's claims are defensively preempted and subject to dismissal.[4] Therefore, the Court must determine whether Plaintiff's claims "relate to" an ERISA Plan.[5]

The ERISA statute does not define the term "relate to." The Supreme Court has held that "a state law relates to an ERISA plan if it has a connection with or reference to such a plan."

---

("The Court can consider *pre-existing documents* that are central to the claims and whose authenticity is not challenged. It cannot consider newly-created affidavits."). Moreover, the Court declines Defendant's invitation to convert the Motion into a motion for summary judgment.

[4] Plaintiff filed her Complaint in this Court alleging diversity jurisdiction as the parties are of diverse citizenship. On January 18, 2024, in response to the Court's inquiry, Plaintiff filed a statement of claim alleging that the amount in controversy in this action exceeds $75,000. [ECF No. 40].

[5] Plaintiff does not allege the existence of an ERISA plan in her Complaint and does not concede in her response to the Motion that the GEGLAC Policy is an ERISA plan. The Court is unable to determine, based on the allegations in the Complaint, whether the GEGLAC Policy is governed by ERISA. However, for purposes of this Motion, the assumes the existence of an ERISA plan.

*Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001). To determine a state law's "connection with" ERISA, courts must look to "ERISA's objectives as a guide to the scope of the state law that Congress understood would survive." *Rutledge v. Pharmaceutical Care Management Assoc.*, 592 U.S. 80, 86 (2020) (internal quotation omitted). Therefore, "courts [must] deduce Congress's intent and . . . apply this interpretation to the facts of each case that arises." *Morstein v. Nat'l Ins. Services, Inc.*, 93 F.3d 715, 718 (11th Cir. 1996). While the phrase "relate to" is broad, "not every state law that affects an ERISA plan or causes some disuniformity in plan administration has an impermissible connection with an ERISA plan." *Rutledge,* 592 U.S. at 87.

While courts routinely find that state law claims against an insurer to recover benefits "relate to" an ERISA plan, *see e.g.*, *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1213 (11th Cir. 1999), the same does not always hold true for fraudulent inducement claims like Plaintiff's. In *Morstein*, the plaintiff alleged that an insurance agency and agent—non-ERISA entities—fraudulently induced her into changing benefit plans. The Eleventh Circuit held that Congress did not intend for such claims to be preempted.

> The Fifth Circuit has found that Congress did not intend for ERISA preemption to extend to state law tort claims brought against an insurance agent. *Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir. 1990). Such preemption, reasoned the Fifth Circuit, would "immunize agents from personal liability for their solicitation of potential participants in an ERISA plan prior to its formation" *Id.* We now adopt the rationale of the Fifth Circuit as stated in *Perkins* and hold that, when a state law claim brought against a non-ERISA entity does not affect relations among principal ERISA entities as such, then it is not preempted by ERISA.

*Morstein*, 93 F.3d at 722.

The Eleventh Circuit reached a similar result in *Cotton.* 402 F.3d at 1291. There, the plaintiffs based their claims on purported misrepresentations made by the defendant insurer to induce the plaintiffs to purchase insurance. The Eleventh Circuit found that the plaintiffs' fraud

6

claims were not completely preempted by ERISA.[6] In particular, the Court found it significant that the plaintiffs were not challenging the defendant insurer's decision not to pay benefits under the terms of the plan. Rather, the plaintiffs alleged that the defendants induced them to purchase the policy by misrepresenting the amount of benefits the policies would provide. "In other words, the plaintiffs' dispute [was] with Mass Mutual the seller of insurance products, not Mass Mutual the ERISA fiduciary." *Id.* In addition, because the plaintiffs were not seeking benefits under the policy, the Court found that the fraud claims did not "relate to" an ERISA plan. Finally, the Court focused on the role of the defendant when it made the purported misrepresentations. "It was not acting 'in its role as an ERISA entity' at the time the plaintiffs allege that it fraudulently induced them to buy the . . . insurance policies at issue here." *Id.* at 1287.

Based on the allegations in the Complaint, the Court finds that Plaintiff's claims are akin to those in *Morstein* and *Cotton*.[7] Plaintiff alleges fraudulent inducement, misrepresentation, and related consumer protection claims against Defendant based on the representations made in the Letter. In sending the Letter, GEGLAC was not acting in its capacity as an ERISA entity. Rather, it was acting as the seller of an insurance product. *See Cotton*, 402 F.3d at 1284-85 ("[W]hen an insurer is not acting in its capacity as an ERISA entity, we can see no reason that Congress would

---

[6] While the holding in *Cotton* is based on complete preemption, the Eleventh Circuit also discussed several defensive preemption cases, noting that defensive preemption cases "may inform the complete preemption analysis." *Cotton*, 402 F.3d at 1281-82. The Court found that "[t]he complete preemption and defensive preemption doctrines are very complicated and the cases are numerous. The facts of the instant case do not fall neatly into any category of case law that allows for an easy or quick answer to be found from Eleventh Circuit case law." *Id.* (quoting *Wilson v. Coman*, 284 F. Supp. 2d 1319, 1341 (M.D. Ala. 2003)).

[7] Defendant relies heavily on *Hall v. Blue Cross*, 134 F.3d 1063, 1064 (11th Cir. 1998), which held that a plaintiff's fraudulent inducement claims were preempted by ERISA. However, in *Hall*, the plaintiff challenged the correctness of the defendant insurer's decision to deny benefits under the relevant plan. Here, Plaintiff does not dispute that the GEGLAC Policy contains an offset for IDI benefits and a $100 minimum monthly benefit. Rather, Plaintiff contends that she never would have agreed to sign up for the GEGLAC Policy had GEGLAC not misrepresented its terms. As in *Cotton*, "the terms of the plan documents are clear and unambiguous, and the plaintiffs are not entitled to relief under them. Nor do their allegations, if properly characterized and understood, seek relief under the plan or challenge any action by Mass Mutual in its fiduciary capacity. This distinguishes the case from those in which we reasoned that the plaintiff was essentially challenging an insurer's denial of benefits." *Cotton*, 402 F.3d at 1291.

have sought to immunize it from liability for fraud or similar state-law torts."). Moreover, Plaintiff does not dispute Defendant's interpretation of the GEGLAC Policy, namely that it contains an offset for IDI benefits and a minimum monthly benefit of $100. Instead, she challenges GEGLAC's representations made before "formation of the plan itself." *Id*. at 1283. At bottom, "reduced to the size of a pea, this case is really about claims of fraud and misrepresentations in the sale of some . . . insurance policies." *Id*. at 1279.  Accordingly, at this stage of the litigation, the Court finds that Plaintiff's claims do not "relate to" an ERISA plan and, therefore, are not defensively preempted.

## Conclusion

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss for Failure to State a Claim, [ECF No. 6], is DENIED.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 24th day of January, 2024.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

.